## Case No. 4,067.

DRAKE et al. v. TAYLOR et al.

[6 Blatchf. 14.] [1]

Circuit Court, S. D. New York. Dec. 31, 1867.

EQUITABLE LIENS—PARTNERSHIP—INDIVIDUAL AND FIRM LIABILITIES — ELECTION BY CREDITORS — BANKRUPTCY.

1. An equitable lien cannot be enforced against money, or its representative, unless the money, or a specific substitute for it, can be identified.

2. Where H. individually, and T. individually, signed an agreement, whereby they agreed to account to D. for the proceeds of certain bills of lading, which were simultaneously delivered by D. to H., for himself and T., they being partners, and for any insurance money which should be received as such proceeds, until certain drafts accepted by D., for account of such partnership, against the goods covered by the bills of lading, should be provided for, the bills of lading having been held by D. as security for such acceptances, and the goods having been insured by such partnership, in the name of H., and having been lost at sea: Held, that T. and H. were liable, the two jointly, and each of them individually, to fulfill such agreement; and, T. and H. having become insolvent, and assigned their partnership, as well as their individual estates, for the benefit of their creditors, that D. had a right, at his election, to come in, under such assignment, as a creditor of T. and of H. individually, and to exhaust his remedy thereunder, against the separate estate of each of them, and afterward come in on the surplus of the joint estate of the two, after the payment of the joint debts of the two.

In equity. This was a motion for a provisional injunction. The plaintiffs [James Drake and others] were merchants and bankers, residing in London, and composing the firm of Drake, Kleinwort & Cohen. In April, 1867, the plaintiffs, through Simon De Visser, their agent at New York, issued a letter of credit, at New York, to the defendant Henry W. Hubbell, authorizing drafts at four or six months after sight to be drawn on the plaintiffs at London, by a house in Hong Kong and two houses in Manilla, for account of Hubbell and the defendant Robert L. Taylor, (under the name of Taylor & Hubbell, of New York,) against shipments of produce to New York, to the amount of £30,000 sterling, the invoices and bills of lading of the shipments to be sent to De Visser, at New York. Hubbell, for himself and Taylor, agreed to provide funds to meet the drafts at maturity, and pledged to the plaintiffs all the property that should be purchased with the credit and its proceeds, and the policies of insurance on it, and the bills of lading of it, as collateral security for the payment of the drafts, with authority to the plaintiffs to take possession of the property, at discretion, for their security. Under this letter of credit, drafts were drawn on the plaintiffs, to the amount of £29,320. 14s. 9d. sterling, which they accepted. These drafts were drawn against a shipment of 5,699

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

bales of hemp, and 6,478 bags of sugar, by the British ship Hotspur, from Manilla to New York, and the bills of lading therefor were duly sent to De Visser. This cargo was insured by Taylor & Hubbell, in the name of Hubbell, in New York, under an open policy, for $200,000, which was about the amount of the drafts in the paper currency of the United States. The vessel and cargo were totally lost on the voyage. After the loss, Hubbell applied to De Visser for the bills of lading, and delivered to him a written paper, signed by Hubbell and by Taylor, each individually, in the words following: "Received from Mr. Simon De Visser, of New York, as agent for Messrs. Drake, Kleinwort & Cohen, London, the following merchandise, viz., A 1,899 bales, LL 580 bales, RR 180 bales. L 3,040 bales hemp. B 2,642 bags, C 3,836 bags sugar, as specified in the bill of lading per Hotspur, Capt. Bryant, from Manilla, which we jointly and severally agree to hold, on storage, as the property of the said Drake, Kleinwort & Cohen, with liberty to sell the same, and account to Simon De Visser, or to them, until the bills of exchange, drawn by Peele, Hubbell & Co., upon Drake, Kleinwort & Cohen, and accepted by them, for our account, £—— sterling, due in London, ——, 1867, for the purchase of the said goods, shall have been satisfactorily provided for. We agree to keep the property insured against fire, by policies satisfactory to Simon De Visser, and payable to his order, in case of loss, it being understood that he is not to be chargeable with any expenses incurred, the intention of this arrangement being to protect and preserve unimpaired the lien of Drake, Kleinwort & Cohen in said property. Signed in duplicate. New York, 1 August, 1867. Henry W. Hubbell. Robt. L. Taylor." The bill averred that, after the delivery of this paper to De Visser, Taylor and Hubbell, not having received from him the bills of lading, agreed with him that, if he would deliver to them the bills of lading, they would hold any insurance money they might collect on the cargo, as the proceeds of the cargo, (it having been previously stated by them to De Visser, that they could not collect the insurance money without having possession of the bills of lading,) and would, upon the receipt thereof, pay it over to De Visser, for the plaintiffs. This averment was denied by Hubbell, who swore that the bills of lading were received by the defendants from De Visser, without instructions of any kind as to the appropriation of the funds. De Visser delivered the bills of lading to Hubbell, and Hubbell, in whose name the insurance had been effected, collected and received, on behalf of himself and Taylor, the sum of $200,000, as the insurance money, and applied it without discrimination, to the joint adventures of Taylor and himself, and in paying drafts and notes, and other joint indebtedness, of Taylor and him-

self. The drafts drawn on the plaintiffs were not provided for by Taylor or Hubbell. On the 24th of October, 1867, Hubbell and Taylor, each of them, made a separate assignment to the defendants Gardner, Irvin and Sherman, conveying all his estate, real and personal, of every name and description, and wheresoever situated, then owned and possessed by him, or in which he was in any manner interested, "upon trust, to sell and dispose of the same, and apply the proceeds thereof towards the payment and discharge of all and every debt and obligation owing by the party of the first part, or for which he is in any manner liable, without preference, and, in the next place, after the payment and discharge of every debt and obligation of the party of the first part, in full, to render the surplus, if any, to the party of the first part, his representatives or assigns." After these two assignments had been made and accepted by the assignees, Hubbell and Taylor, on the 26th of October, 1867, executed an assignment to the defendants Gardner, Irvin and Sherman, which contained the following recital: "Whereas, the said parties of the first part have been engaged in mercantile operations and business for their joint account, and, in the course and for the purpose thereof, have contracted joint liabilities, now outstanding, which they are not able to satisfy at maturity, and have acquired property and assets belonging to them jointly." It then recited, that each of the assignors had assigned "his property," by the assignment of the 24th of October, 1867, to the same assignees, "in trust for equal distribution among creditors." It then declared that the assignors, "to the end of devoting their joint property to the payment of their debts, as herein provided," assigned to the assignees "all the property, estate, and effects whatsoever, belonging to the said parties of the first part jointly, upon trust, to convert the same into money, and to apply the net proceeds thereof, after first paying thereout the lawful expenses and charges attendant upon the execution of the trust, to or toward the payment of all the joint debts and liabilities of the said parties of the first part, in full, if there be sufficient funds therefor, and ratably, if not sufficient; and, should there be a surplus, after such provision for the joint debts and liabilities, to apply the share of such surplus property belonging to each of the said parties of the first part, upon a due accounting as between them, to the payment of the individual debts and liabilities of such party to whom such share so belongs, in full, if there be sufficient funds therefor, and ratably, if not sufficient, and, should there be a surplus, to render and pay the same to such party to whom the same belongs." The property assigned by all of the assignments was not equal, in value, to the amount of indebtedness.

The plaintiffs claimed to have an equitable lien on the insurance money, and upon that which was the substantial representative thereof, in the hands of the assignees, and to be entitled to have the amount of such insurance money paid to them by the assignees, out of the assigned property. The bill set forth, that the value of the assigned property, in the hands of the assignees, was $1,350,000; that, of that amount, only $50,000 came to their hands as the property of Hubbell; and that the entire residue thereof was conveyed to them by Taylor individually. The bill also averred, that it was the duty of the assignees to marshal separately the assets of each estate assigned to them, and to appropriate the assets of each separate estate, in the first place, to the payment of the debts due by the assignors, severally and individually, before any payments were made by the assignees upon the joint indebtedness of Taylor and Hubbell; that the assets assigned by Taylor were more than sufficient to pay all his individual obligations, and to leave a surplus over for the benefit of the joint creditors of Taylor and Hubbell; and that the plaintiffs were entitled to have the $200,000 insurance money treated by the assignees as the separate and individual debt of Taylor, and to have it paid out of the property assigned by Taylor individually, before any payment should be made by them on account of any of the joint indebtedness of Taylor and Hubbell. The bill also averred, that the assignees had declared it to be their intention to distribute the proceeds of the property conveyed to them by Taylor and Hubbell, pro rata, among all the creditors of Taylor and Hubbell, whether such creditors were creditors of Taylor and Hubbell jointly, or were separate creditors of Taylor and Hubbell individually; and that they had no right so to do. The assignees denied that they had made any such declaration, and averred that some of the liabilities were joint and some of them were several, and that Taylor's individual assets exceeded largely the aggregate of the liabilities contracted in his separate business, and that they believed it would be claimed by Taylor's creditors, that, in the liquidation of his affairs, his individual property was first applicable to the payment of his individual debts, before any of it could be appropriated to the payment of any partnership debt due from him and Hubbell.

The bill prayed, (1) for an injunction restraining the assignees from disposing of so much of the property assigned by Taylor and Hubbell as should leave in their hands insufficient to pay to the plaintiffs the $200,000, with interest and costs; (2) for the appointment of a receiver of so much of the assigned estate as should be sufficient to pay the $200,000; (3) for a decree that the plaintiffs had a prior lien in equity upon so much of the assigned estate, in the hands of the assignees, as would pay the $200,000; (4) if no such prior lien existed, then for a decree that the plaintiffs were creditors of Taylor indi-

vidually, for the $200,000, and, as such, were entitled to be paid out of the assigned estate in the hands of the assignees, which came to them under the individual assignment of Taylor, prior to any payment by the assignees of any debts for which Hubbell and Taylor were jointly and not severally liable, and that the assignees should so marshal the assets of the assigned estates, and so appropriate the payments therefrom; and that, until the final decree in the cause, the assignees might be restrained, by injunction, from disposing of so much of the property assigned to them by Taylor individually, as should leave in their hands a sum not sufficient to pay the $200,000 from the separate estate of Taylor, with interest and costs.

Clarence A. Seward, for plaintiffs.

William M. Evarts, Joseph H. Choate, and Livingston K. Miller, for defendants.

BLATCHFORD, District Judge. The claim of the plaintiffs to have an injunction restraining the assignees from disposing of so much of the assigned property as shall leave in their hands insufficient to pay the plaintiffs the $200,000, is based on the proposition that the plaintiffs have an equitable lien on the insurance money, and on that which is the substantial representative thereof, in the hands of the assignees, and that they are entitled to a decree that they have a prior lien in equity upon so much of the assigned estate in the hands of the assignees, as will pay the $200,000. In regard to the $200,000 insurance money, the bill avers, that it was converted by Taylor and Hubbell to their own uses, and was placed in their general business, for the benefit of their estate, either joint or several, and was applied by them to and for the benefit of their individual interests. The bill does not pretend that the money, or any specific substitute for it, can be identified. The money was received by Hubbell alone, and Taylor swears that no part of it ever came into his hands or possession, or was added to his estate, and that the property assigned by him to the assignees did not embrace any portion of the proceeds of the policies of insurance. Hubbell swears that the money was applied to the joint adventures of himself and Taylor, and in paying drafts and notes, and other joint indebtedness of Taylor and Hubbell, and was used generally, with other means and funds of Taylor and Hubbell, in protecting and paying their debts and liabilities on joint account. Under these circumstances, the money having been mixed and confounded with other money, and neither it nor any substitute for it being shown to be capable of ascertainment or identification, or to be in existence anywhere, the right of the plaintiffs to follow the money, and to claim a lien upon any thing in respect of it, is gone. 2 Story, Eq. Jur. §§ 1258, 1259. It may very well be, that Hubbell, when he received the insurance money, received it subject to a trust, either to pay it over to De Visser, or to apply it toward the payment of the drafts accepted by the plaintiffs, and that it was wrongfully misapplied by Hubbell. But, unless its identity, or the identity of some property into which it has been wrongfully converted, can be traced, the rights which the plaintiffs may have had in regard to it, while it remained in the hands of Hubbell, or which they would have had in regard to any traceable property into which it was wrongfully converted, are gone. This being so, the plaintiffs are not entitled to a decree that they have a prior lien in equity upon so much of the assigned estate in the hands of the assignees, as will pay the $200,000, nor to an injunction restraining the assignees from disposing of so much of the property assigned by Taylor and Hubbell, as shall leave in their hands insufficient to pay to the plaintiffs the $200,000.

The instrument of the 1st of August, 1867, was a very strange paper to be given by Taylor and Hubbell, and accepted by De Visser, on the existing facts of the case. The merchandise had been lost at sea, to the knowledge of the parties, and yet the paper purports to be a receipt for the merchandise by Taylor and Hubbell, with an agreement by them to hold it on storage, as the property of the plaintiffs, with liberty to sell it, and account to the plaintiffs, or to De Visser, for its proceeds, until the drafts accepted by the plaintiffs, for the purchase of the merchandise, should have been satisfactorily provided for; and the paper declares the object of the arrangement to be, to protect and preserve unimpaired the lien of the plaintiffs in the property. The agreement is signed by Hubbell, individually, and by Taylor, individually, and purports, on its face, to be a joint and several agreement by them. This agreement, taken in connection with the accompanying delivery of the bills of lading by De Visser to Hubbell, for himself and Taylor, on the faith of the agreement, must, I think, be construed to be an agreement by Taylor and Hubbell, jointly and severally, to account to the plaintiffs for the proceeds of the bills of lading, and for the insurance money received as such proceeds, until the drafts accepted by the plaintiffs should be provided for. It created an obligation or duty in Taylor, individually, and in Hubbell, individually, as well as in Taylor and Hubbell, jointly, to fulfill such agreement, and, as a consequence of the diversion of the money, it makes each of them individually, as well as the two jointly, liable to respond, as debtors, to the plaintiffs, for the $200,000. The plaintiffs, coming into this court by this bill, have a right to say, under these circumstances, if they choose to do so, that they will come in first as creditors of Taylor and of Hubbell, individually, and exhaust their remedies, under the assignments, against the separate estate of each of them, and afterward come in upon the surplus, if there

should be any, of the joint estate of the two, after the payment of the joint debts of the two. The plaintiffs say, by their bill, that they desire to have the debt treated by the assignees as the separate and individual debt of Taylor, and claim that, therefore, they are entitled to have it paid out of the property assigned by Taylor, individually, before any payment shall be made by the assignees on account of any of the joint indebtedness of Taylor and Hubbell. I think this claim is well founded. It is doubtful whether any thing passed to the assignees by the joint assignment of the 26th of October. The two assignments of the 24th of October assigned to the assignees all the estate, real and personal, of each assignor, of every name and description, and wheresoever situated, then owned and possessed by him, or in which he was in any manner interested, and the trust in each of these assignments is, to pay every debt owing by the assignor, or for which he is in any manner liable, without preference. It would seem, therefore, that the assignees must hold all the assigned property under the first two assignments, and must administer it under the trusts therein declared. This being so, the plaintiffs, coming into court with a claim against Taylor, individually, as they do, are entitled to a decree that they are creditors of Taylor, individually, for the $200,000, and, as such, are entitled to be paid out of the property assigned by Taylor, individually, prior to any payment, by the assignees, of any debts for which Hubbell and Taylor are jointly, and Taylor is not severally, liable, and that the assignees so marshal the assets of the assigned estates, and so appropriate the payments therefrom. This being so, they are also entitled to an injunction restraining the assignees, until the final decree in the cause, from making any transfer or disposition of any of the property assigned to them by Taylor, individually, which can interfere with such right of the plaintiffs. It does not appear whether the property assigned by Taylor, individually, will be sufficient to pay in full all the debts of Taylor, individually. Therefore, so much of the injunction asked for as would compel the assignees to keep in their hands sufficient of the property assigned by Taylor, individually, to pay the plaintiffs their $200,000 in full, cannot be granted. But they are entitled to an injunction restraining the assignees from disposing of so much of the property assigned to them by Taylor, individually, as shall leave in their hands less than will be sufficient to pay the plaintiffs, out of the separate estate of Taylor, the proper pro rata proportion thereof properly applicable to their claim, upon the principle of paying out of the property assigned to them by the individual assignment executed by Taylor on the 24th of October, all the debts of Taylor, individually, prior to paying therefrom any debts for which Hubbell and Taylor are jointly, and Taylor is not severally, liable.

It may be, that the assignees cannot close their trusts without bringing into some proper court, by a direct proceeding, other creditors, whose interests may be affected by the manner in which those trusts are administered. But that is no reason why the plaintiffs, on making out, as they have done, a proper case for the special relief they ask for, should not have it. So far as any other creditors, who claim under the assignments, are concerned, they are represented, sufficiently for the purposes of this suit, by and through the assignees, against whom alone the plaintiffs ask any relief.